JOSÉ A. HERNÁNDEZ PÉREZ, Plaintiff and Appellant, v. SANTIAGO IGLESIAS SILVA, Defendant and Appellee; and HENRY G. MOLINA ST. REMY, Intervener and Appellee.

No. 8156. Argued March 19, 1941.—Decided April 3, 1941.

410

*Francisco González Fagundo,* for appellant. *G. Cruzado Silva,* for defendant appellee. *Henry G. Molina, pro se* and *S. de la Fuente,* for the intervener appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Santiago Iglesias Silva and his wife were the owners of a rural property of 19.40 cuerdas situated in the Ward Cayaguas of San Lorenzo, which together with other properties belonging to the same owners had been mortgaged to the General Cigar Co., Inc., to guarantee a credit for a total amount of $6,700, to become due on June 1, 1933, this particular property guarantying the amount of $1,500 principal, interest thereon and $100 for costs in case of judicial claim.

On December 3, 1937, the General Cigar Co., Inc., entered into a contract with Henry G. Molina which was drawn in a private document subscribed before Notary Raúl Benedicto, by virtue of which the former assigned to the latter all said mortgage credits for an agreed price of $1,225 which the assignor received from the assignee, it being stipulated in said contract that the first party authorized the second to institute, in the name of the latter, any lawsuits which might be necessary in order to render said credits effective, it being further agreed that all the expenses and costs would be charged to Mr. Molina and the General Cigar Co., Inc., was relieved of any liability which might arise as a consequence of said lawsuits.

Instead of foreclosing the mortgage credits, Mr. Molina agreed with Santiago Iglesias Silva to offer the property of 19.40 cuerdas for sale for a price less than the total of the credit which it guaranteed, as the value of the property was not sufficient to cover the same, it being understood that whatever amount might be obtained for said property would go to Mr. Molina in payment of the credit which the property guaranteed, Mr. Silva and his wife binding themselves to directly convey to the purchaser the dominion title which they had to said property. In accordance with this agreement, on January 28, 1938, Santiago Iglesias Silva and Henry G. Molina as one part, and Evaristo Contreras as the second part, subscribed a private contract before Notary Santiago de la Fuente by virtue of which the property of 19.40 cuerdas was sold to Contreras for an agreed price of $1,000 to be paid in the following manner: $500 at the time of executing the deed and the remainder in two installments of $250 each, to fall due respectively one and two years after the last mentioned date. A clause of said contract stated that Messrs. Iglesias and Molina guaranteed to the purchaser the record of the property in the Registry of Property completely free of liens.

■ Prior to the assignment of the credit to Mr. Molina, the property in question had been adjudicated to The People of Puerto Rico in an administrative proceeding followed for the collection of a certain income tax owed by Mr. Iglesias. As said income tax had fallen due after the execution of the mortgage in favor of the General Cigar Co., Inc., and as consequently, it had no preference over the mortgage credit, Mr. Molina, in compliance with the contract entered into with Contreras and in order to render null the adjudication in favor of The People of Puerto Rico, filed a lawsuit for the collection of the mortgage credit, in the name of the General Cigar Co., Inc., against Santiago Iglesias, his wife and The People of Puerto Rico, and as a consequence of said lawsuit he obtained judgment in favor of the plaintiff on March 28, 1938, whereby, among other holdings, the nullity of the title of The People of Puerto Rico over the property to which we have referred was decreed. After the title of The People of Puerto Rico had been cancelled in the Registry of Property, instead of holding an auction sale of the property for the payment of the mortgage credit, the General Cigar Co., Inc., Molina and Iglesias chose to cancel the mortgage credit, as in fact it was cancelled the property thus being left free of liens in favor of Iglesias and his wife, who in turn became bound to convey their title to Contreras on the understanding that the price would be received by Mr. Molina in payment of the credit which was previously cancelled to facilitate the transaction. In other words, although the title to the property appeared in the registry in the name of Santiago Iglesias Silva and his wife, its actual owner was Mr. Molina.

At this stage of the proceedings, on July 26, 1938, Attorney Santiago de la Fuente, of the law office of Mr. Molina, addressed a letter to Attorney J. A. Hernández Pérez, enclosing therein the writ of the District Court of San Juan wherein the cancellation of the record in favor of The People

of Puerto Rico was decreed, and a certified copy of the deed of cancellation of the mortgage, and suggesting to Mr. Hernández Pérez that he advise his client, Contreras, to sign the deed of purchase, paying the $500 in cash as had been agreed, and to immediately take possession of the property. The Attorney Hernández Pérez answered that his client was no longer in a financial condition to comply with his contract and said Mr. Hernández Pérez having come into the possession of a promissory note for $2,000 subscribed by Santiago Iglesias Silva on April 12, 1932, to fall due on the 31st of July of that same year, issued to the order of Anicasio Rodríguez Montañez, he filed a complaint against Iglesias for the collection of said amount on August 3, 1938, and in order to secure the effectiveness of the judgment, he requested and obtained the attachment of said property as belonging to the defendant, Santiago Iglesias Silva.

It is necessary to state here that Attorney Hernández Pérez, due to the relationship of attorney and client which existed between him and Mr. Contreras, had had interviews with Mr. Molina and with Mr. Iglesias himself, and had received letters from Mr. Molina wherein he was completely informed about the agreements and transactions already mentioned, and with full knowledge of all these, he acquired the promissory note and attached the property when he had in his possession the documents which credited that the property was free of liens and recorded in the name of Mr. Iglesias.

When Molina learned about the lawsuit filed by Hernández Pérez against Santiago Iglesias Silva for the collection of the promissory note for $2,000, he requested and obtained permission to intervene in said case due to the interest which he alleged to have in the attached property. He filed his complaint in intervention which he notified to the plaintiff Hernández Pérez but not to the defendant Iglesias Silva. The former demurred to the complaint and when his demur-

rer for want of facts sufficient to constitute a cause of action had been overruled, he answered the complaint in intervention.

. At this stage of the case, Santiago Iglesias and his wife and Henry G. Molina on his own right and as attorney in fact for his wife, by deed No. 35, executed on June 10, 1939, before the Notary Santiago de la Fuente, sold the property of 19.40 cuerdas to Juan Muñoz for an agreed price of $1,000, of which amount Mr. Molina received $600 at the time of executing the deed and the remainder was also received by Mr. Molina in a promissory note to bearer guaranteed by a · mortgage on the property sold. It was stated in the deed that the price was received by Mr. Molina "as owner of the property." It was further stated as an essential condition for the sale, that the property was sold free of liens and that if any should appear from the Registry of Property, the vendors bound themselves to obtain its cancellation, for which purpose they would be allowed a reasonable term.

On July 14, 1939, that is, a little more than a month after the property had been sold, trial was had in the intervention proceedings and on the following October 2, judgment was rendered decreeing the nullity of the attachment levied in the main suit, imposing the payment of the costs on the defendant in the intervention proceedings, J. Hernández Pérez, and sentencing the latter to pay to the intervener the amount of $100 for attorney's fees. It was against this judgment that Hernández filed the present appeal.

■ The appellant alleges that the lower court committed error in holding the trial of the intervention proceedings and in rendering judgment without having previously served the defendant Iglesias with copy of the complaint in intervention and without having decided the principal suit.

In truth, Mr. Iglesias was not served with copy of the complaint in intervention. It would have been very easy to serve him with the same but, was Mr. Iglesias a necessary

or indispensable party in order that the court could arrive at a full decision of the controversy in the intervention proceedings? If he was not a necessary or indispensable party, the court did not err in proceeding to hold the trial. Section 74 of the Code of Civil Procedure. In our opinion, Iglesias was not an indispensable party whose absence from the record could prevent the complete decision of the controversy. No remedy against him was requested in the complaint in intervention. The only purpose sought by the said complaint was to obtain the annulment of the attachment levied on a property which Iglesias himself had sold a month before the trial and on which, consequently, he had no interest, and the judgment rendered completely deciding the controversy did not include any holding against him. Therefore, the court acted in perfect harmony with the above cited Section 74 which provides that "the court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, . . . " Perhaps it is convenient to state here that up to the present, Mr. Iglesias has not complained in any manner for not having been made a party in the intervention proceedings notwithstanding that on the day of the trial he was present in court, according to the transcript of the evidence.

██ Was it necessary or indispensable in order that the court could render judgment in the intervention proceedings, that the principal suit be previously adjudged? No, the proceedings followed by Mr. Molina were not third party proceedings, where the special Law in the matter (Section 14) contains a provision to that effect. There is no legal provision in our laws which demands that requisite in cases of intervention. The appellant devotes most of his brief to discuss this matter, trying to show that the provisions of the Act referring to third party proceedings are applicable to a proceeding for intervention, committing thus the regretable error of

confusing both proceedings. Ten years ago, this Court, in the case of *Casanova* v. *Municipal Court,* 41 P.R.R. 841, 843, established that the remedy of intervention provided by Section 72 of the Code of Civil Procedure and the Act referring to third party proceedings are two different remedies which may subsist independently, and that the fact that the alleged vendor may have some other adequate remedy for the protection of his right does not prevent him from making use of the intervention proceedings. The case of *Casanova, supra,* was cited with approval in *Murray* v. *Tabacaleros de Bayamón, Inc.,* 43 P.R.R. 200, 203; in that of *Benítez* v. *Tabacaleros etc. and Fed. Int. Credit Bank of Baltimore,* 50 P.R.R. 754, 757, and finally in the recent case of *Reyes & Pagán* v. *District Court,* 52 P.R.R. 633, 636, cited by the appellant himself, and when this Court decided that the fact that the intervener may avail himself of the remedy of third party proceedings, does not prevent him from making use of his right to intervene, it did not err, but followed the construction given to Section 72 in California, from where this legal provision was adopted, and where, the same as in the State of Idaho (Sec. 4111, Revised Codes)—which also adopted it from California—it has been decided that the fact that the intervener may have some other adequate remedy for the protection of his right does not prevent him from making use of the remedy of intervention. *Coffey* v. *Greenfield,* 55 Cal. 382; *Bogue* v. *Roeth* (Cal.) 276 Pac. 1071; *Elms* v. *Elms,* 52 P. (2d) 223; 20 Cal. Jur. 521; and *Potlach Lumber Co.* v. *Runkel,* 16 Idaho 192, annotated in 23 A.L.R. (N. S.) 536.

██ It is alleged in the third and fourth assignments of error that the judgment is contrary to law and to the evidence and that the court committed error in admitting in evidence the contract executed on December 3, 1937, by the General Cigar Co., Inc., and the Attorney Henry G. Molina, authenticated by affidavit No. 2420 before the Notary Raúl Benedicto.

In discussing the third error, it is stated that the judgment is contrary to law because all the parties have not been heard, referring to Santiago Iglesias, and that it is contrary to the evidence because the attachment was levied on August 3, 1938, and it does not appear from the evidence that prior to this date Henry G. Molina had any title which could establish that the property attached exclusively belonged to him. We have nothing to add to what has been said in relation to the want of notice to Iglesias. It is true that the assignment of the mortgage credits to Molina was not executed by public deed, but this is no obstacle to his acquisition of title over said credits. Section 1210 of our Civil Code provides: "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law". We admit that "the assignment of a credit, right, or action", according to the provisions of Section 1416 of the Civil Code (1930 ed.), *"shall produce no effect against a third person . . .* if said assignment involves real property, (but) from the date of its entry in the registry." But, is Hernández Pérez in a position to allege his status as third party in this case? It has been repeatedly held by this Court that a creditor through attachment cannot prejudice the rights of the purchaser, perfected according to law before the attachment was levied, notwithstanding that at the date of the entry in the Registry, the formality of stating said contract in a public deed had not been complied with. *Vélez* v. *Camacho et al.,* 8 P.R.R. 35. See also *Solá* v. *Morera et al.,* 7 P.R.R. 7; *Fernández* v. *Márquez & Co.,* 3 P.R.R. (2d) 200.

Prior to the date of the attachment, Molina, in order to carry into effect the contract entered into with Contreras, had cancelled the mortgage assigned to him by the General Cigar Co., Inc., but notwithstanding this, in accordance with

the agreement made with Iglesias, Molina was the true owner of the property, although it was recorded in the name of Iglesias, since according to the provisions of Section 1339 of the Civil Code (1930 ed.), ''the sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered.'' This transaction was known by Iglesias.

There is no doubt whatsoever that if Iglesias had refused to acknowledge the title of Molina, the latter would have been able to compel him to execute the deed through the corresponding action, in accordance with Section 1339 of the Civil Code already cited; and if the title of Molina was valid with respect to Iglesias, it must necessarily be valid with respect to Hernández, who being a mere creditor of Iglesias, could not acquire over the latter's property more rights than those enjoyed by his debtor. But, aside from these considerations, Hernández Pérez could not be considered a third party in interest in this case since he had personal knowledge, long before acquiring the promissory note, of the rights which Molina had over the property, and it is elementary in this jurisdiction that the person who has knowledge upon acquiring the real property of the liens affecting the same cannot be considered as a third party in due course although he has not intervened in the recorded contract. *Valdés* v. *Valle*, 1 S.P.R. 75; *Carmona et al.* v. *Cuesta*, 18 P.R.R. 178.

When Molina filed his complaint in intervention, he had, as we have seen, the title of ownership over the property, although said title had not been transferred by public deed, and this gave him sufficient interest to be able to file a petition for intervention. It is true that when the trial was held, the property had been sold to Juan Muñoz, but it is none the less true that in the deed of sale, a mortgage was constituted to guarantee a promissory note payable to bearer

for $400, delivered to Mr. Molina according to the deed already mentioned, No. 35 of June 10, 1939, executed before Notary Santiago de la Fuente, which deed was presented in evidence by the appellant himself.

The private contract of December 3, 1937, by virtue of which the mortgage credits were assigned to Mr. Molina, was clearly admissible in evidence, since as we have seen, it was a valid document, and Hernández Pérez not being a third party in due course, could not challenge its validity.

For the foregoing reasons the appeal must be dismissed and the judgment appealed from affirmed.